## APPEAL OF JULIUS G. DAY, EXECUTOR, ESTATE OF HARRY GOODYEAR DAY.

## APPEAL OF LOUIS E. STODDARD, EXECUTOR, ESTATE OF EZEKIEL G. STODDARD.

Docket Nos. 2048, 2725.   Submitted November 1, 1925.   Decided February 19, 1926.

The value of certain shares of stock as of the date of the decedents' deaths determined.

*Edward B. Burling*, *H. C. Kilpatrick*, *Hampson Gary*, and *E. L. Bono*, *Esqs.*, for the taxpayers.

*L. C. Mitchell*, *Esq.*, for the Commissioner.

Before MARQUETTE, MORRIS, GREEN and LOVE.

FINDINGS OF FACT.

1. Harry Goodyear Day died testate October 16, 1922, and, at the time of his death, was a resident of New Haven, Conn. Julius G. Day was the duly appointed, qualified, and acting executor of the said estate.

Ezekiel G. Stoddard died testate September 18, 1923, and, at the time of his death, was a resident of New Haven, Conn. Louis E. Stoddard was the duly appointed, qualified, and acting executor of his estate.

2. Each of the above decedents, at the time of his death, owned stock in the Red River Valley Co. as follows:

|  | Shares. |
| --- | --- |
| Harry Goodyear Day | 800 |
| Ezekiel G. Stoddard | 2, 035 |

The executor of each estate filed an estate-tax return wherein the stock of the Red River Valley Co. was valued at $125 per share. The Commissioner valued the said stock at $175 per share. There was no change in the affairs of the said company, or in the general market conditions between the two dates of death, and the fair market value of the stock was substantially the same on both dates.

3. The said Red River Valley Co. was incorporated in 1898 and, at the dates involved in these appeals, had a capital stock of $1,000,-000, divided into 10,000 shares, of the par value of $100 each. It

was engaged in the business of owning and operating a large cattle ranch in San Miguel County, N. Mex. Its ranch consisted of a large body of land, 474,419.6 acres in extent, upon which it maintained a range herd of between 18,000 and 20,000 cattle. In addition to the range herd, it owned approximately 900 registered thoroughbred cattle, kept for the purpose of improving the quality of the main herd. It also owned about 800 horses and mules. The entire property was well fenced and the cattle were ranged for the entire year. No appreciable portion of the land was cultivated. It was the practice of the company each year to sell the yearling steers and certain cows which could not survive the winter. The yield of calves in normal years would be about 7,000. In normal years the operating expenses were about $125,000.

As a precaution against lean years or disasters, the company built up and maintained a reserve of approximately $650,000, consisting of marketable negotiable bonds and preferred stock. The years 1922 and 1923 were unusually disastrous for cattle ranches, as there was a marked depression in the cattle market during these years.

4. There were very few transfers of stock of the said company, as the stock was mostly held by the original organizers or as a trust investment for their estates. The only sales of a substantial portion of the stock were in the year 1913, when one block of 625 shares was sold for $125 per share and another block of 1,000 shares was sold for the same price. These were purchased by the officers or stockholders of the corporation from other stockholders who desired to sell their interests. In the year 1921, 2 shares were sold for $100, and, in the year 1923, 26 shares were sold for $100. On August 4, 1924, a stockholder offered to sell 106 shares of stock, held as a trust, for $135 per share, the offer being good for two months. The offer was made to the president of the company, who did not accept it. In 1915, 250 shares of said stock were appraised by the probate court at $100 per share in the probating of the estate of the wife of Louis E. Stoddard. The State courts, in the probating of the estates in this appeal, appraised the value of the stock at $125 per share. No stock at any time had been sold for more than $125 per share. No effort was made to buy or sell any substantial amount of said stock since 1913.

5. The net earnings of the Red River Valley Co. for the fiscal years ended March 31, 1914, to March 31, 1922, and the dividends paid for the fiscal years ended March 31, 1914, to March 31, 1925, inclusive, were as follows:

104881—27——63

| | Net earnings. | Dividends. | | Net earnings. | Dividends. |
|---|---|---|---|---|---|
| 1914 | $122,722.99 | $50,000 | 1921 | $156,687.85 | $220,000 |
| 1915 | 179,209.05 | 80,000 | 1922 | 44,057.56 | 60,000 |
| 1916 | 165,637.78 | 80,000 | 1923 | | 240,000 |
| 1917 | 118,709.14 | 80,000 | 1924 | | 40,000 |
| 1918 | 165,476.97 | 90,000 | 1925 | | 20,000 |
| 1919 | 58,594.96 | 300,000 | 1925 (Apr. 13) | | 20,000 |
| 1920 | 119,368.62 | 170,000 | | | |

6. The balance sheets of the Red River Valley Co. as they appear upon the books of the corporation as of March 31, 1922, 1923, and 1924, are as follows:

| | 1922 [1] | 1923 | 1924 |
|---|---|---|---|
| **ASSETS.** | | | |
| Real estate | $1,423,258.80 | $1,421,971.80 | $1,421,971.80 |
| Investments | 721,792.89 | 687,400.80 | 731,974.05 |
| Cattle | 828,736.00 | 710,765.30 | 543,737.00 |
| Horses and mules | 22,850.00 | 23,900.00 | 18,585.00 |
| Forage | 4,152.54 | 3,143.05 | 2,405.00 |
| Provisions | | 384.49 | 322.09 |
| Supplies | | 167.40 | 239.41 |
| Bell Ranch store | | 1,160.78 | 1,170.92 |
| Improvements | 31,364.46 | 30,599.79 | 30,747.99 |
| Ranch property and equipment | 1,842.47 | 1,825.67 | 1,698.56 |
| Bills receivable (notes) | 25,657.79 | 103,532.00 | 56,312.50 |
| Cash at New Haven office | | 20,119.12 | 23,831.52 |
| Cash at ranch | 64.38 | 4,610.82 | 1,105.88 |
| Total | 3,059,719.33 | 3,009,581.02 | 2,834,101.72 |
| **LIABILITIES.** | | | |
| Capital stock | 1,000,000.00 | 1,000,000.00 | 1,000,000.00 |
| Surplus | 1,860,404.90 | 1,860,404.90 | 1,702,058.60 |
| Accounts payable | 2,467.44 | | 30,000.00 |
| Due employees | | 3,067.90 | 3,750.75 |
| Due C. M. O'Donel | | 465.26 | 1,000.00 |
| Profit and loss | 196,846.99 | 145,642.96 | 97,292.37 |
| Total | 3,059,719.33 | 3,009,581.02 | 2,834,101.72 |

[1] As shown on capital stock tax return.

7. The said investments mentioned in the balance sheets of said corporation had a fair market value on October 16, 1922, and on September 18, 1923, of approximately $650,530.92, computed in accordance with quotations as of that date in standard financial publications.

The land consisted of 474,419.6 acres, valued on the books of the taxpayer at $3 per acre. This land was assessed for state taxation purposes during the years 1922 and 1923, at $1.75 per acre. In 1918, under favorable market conditions, 260,000 acres of the land were sold at $3 per acre.

The Red River Valley Co., in its capital stock tax return, reported a fair value of its assets and liabilities as of March 31, 1922, and 1924, as follows:

| | 1922 | 1924 |
|---|---|---|
| DEBITS AND ASSETS. | | |
| Real estate | $948,839.20 | $829,483.55 |
| Buildings | 31,364.46 | 30,747.99 |
| Machinery | 1,842.47 | 1,698.56 |
| Securities | 721,792.89 | 731,974.05 |
| Cash | 64.38 | 1,105.88 |
| Notes receivable | | 56,312.50 |
| Accounts receivable | 25,657.79 | 23,831.52 |
| Inventory supplies, etc | 4,152.54 | 4,137.42 |
| Cattle | 580,062.00 | 543,757.00 |
| Horses | 22,850.00 | 18,585.00 |
| Total | 2,336,625.73 | 2,241,613.47 |
| CREDITS AND LIABILITIES. | | |
| Accounts payable | 2,467.44 | 4,750.75 |
| Notes payable | | 30,000.00 |
| Capital stock, common | 1,000,000.00 | 1,000,000.00 |
| Surplus | 1,137,311.30 | 1,109,570.35 |
| Profit and loss | 196,846.99 | 97,292.37 |
| Total | 2,336,625.73 | 2,241,613.47 |
| Fair value of capital stock | 2,334,158.29 | 2,206,862.72 |

## DECISION.

The determination of the Commissioner is approved.

## OPINION.

MORRIS: The determination of the value of the stock of the Red River Valley Co., as of the time of the death of the decedents, is determinative of the sole issue in this appeal. The taxpayers reported a value of $125 per share but at the hearing contended the proof evidenced a value of $100 per share. The Commissioner fixed a value of $175 per share. The taxpayers rely in part upon the fact that there were no actual sales of stock in excess of $125 per share. The evidence shows, however, that there were but few transfers and practically none about the time of the death of the decedents. The only appreciable sales were in the year 1913, during which blocks of 625 shares and 1,000 shares were purchased by one set of stockholders from another for $125 per share. Since that time the stock has been held by the original stockholders, their heirs, or estates, and no sales were reported, except two shares in 1921 and 26 shares in 1923, at $100. On June 4, 1924, a certain block of 106 shares, belonging to trusts, was offered for sale at $135, for a limited time, to an officer of the company, but the offer was not accepted. Officers of the company and several stockbrokers and bankers testified that, in their opinion, it would have been difficult, under the circumstances, to sell the stock above par. The evidence, however, does not disclose that any serious effort was ever made to sell or buy any substantial amount of the stock, but, on the contrary, the stock was closely held and the stockholders evidently were satisfied with their investment.

Isolated transfers of stock are not conclusive of the fair market value of other stock of the same issue. We have held that when there is no evidence of market and but a few isolated sales, we must fall back upon an examination of the value of the assets behind the stock and analyze the earnings, balance sheets, and general conditions of the corporation itself, *Appeal of Estate of Jacob Fish*, 1 B. T. A. 882; *Appeal of Howard K. Walter*, 2 B. T. A. 453; and this is the situation in this appeal.

Even a most casual examination of the balance sheets and schedule of dividends and net earnings discloses that the corporation was in a most excellent condition. It was capitalized at $1,000,000, but, in spite of annual dividends over a consecutive period of over 10 years, averaging nearly 14 per cent, it had a book surplus on March 31, 1923, of $1,860,404.90, and on March 31, 1924, of $1,702,058.60. There was practically no indebtedness and its assets consisted of tangibles of a most substantial character. It had in its reserve securities admittedly of a market value of $650,530.92. It owned 474,419.6 acres of land valued on its books at $1,423,258 (at $3 per acre), and even the assessed valuation of the land, fixed by the State Tax Commission of New Mexico at $1.75 per acre, gave it a value of approximately $830,000. The cattle were worth well over $550,000. In addition to this, the company had substantial assets in the form of cash, notes and accounts receivable, and improvements. We are also impressed with the fact that the company was a successful going concern, conservatively and efficiently managed, with every prospect of continued success. A valuation of the assets under the evidence adduced would be well over $2,000,000, a large portion of which were liquid assets. We are not overlooking the fact of the depressed market conditions in the cattle industry during the years 1922 and 1923. We note, however, that the company weathered the storm without dipping appreciably into its surplus, due to its foresightedness and excellent management, which we belive is illustrative of the stability of the corporation.

Without going into a detailed analysis of the various factors entering into the valuation of the stock, a summary of the evidence of value is substantially as follows:

| | |
|---|---|
| Sale price of 1,625 shares in 1913 | $125 |
| Sale price of 2 shares, 1921 | 100 |
| Sale price of 25 shares, 1923 | 100 |
| Book value Mar. 31, 1922 | 305 |
| Book value Mar. 31, 1923 | 300 |
| Book value Mar. 31, 1924 | 280 |
| Fair value reported in capital stock tax return for 1922 | 233 |
| Fair value reported in capital stock tax return for 1924 | 220 |

| | |
|---|---:|
| Appraised value Connecticut probate court, 1923 | $125 |
| Offer of 106 shares but not accepted in 1924 | 135 |
| Valuation fixed by Commissioner | 175 |

The sale price of stock in 1913 should have no bearing on its value in 1922 and 1923, as, since that time, although the balance sheets of 1913 are not in evidence, it is admitted that a substantial portion of the surplus in the form of securities had been built up, and, also, the company has since that time a history of consecutive annual dividends and earnings averaging nearly 14 per cent. And neither are the isolated sales of the few shares in 1921 and 1923 indicative of the value, as we have pointed out.

We are convinced, from the evidence, irrespective of the method employed by the Commissioner in arriving at the value of the stock, that the value of $175 per share was very conservative and that the evidence is insufficient to disturb this valuation.