*945 OPINION.
MoRRis:
The determination of the value of the stock of the Eed Eiver Valley Co., as of the time of the death of the decedents, is determinative of the sole issue in this appeal. The taxpayers reported a value of $125 per share but at the hearing contended the proof evidenced a value of $100 per share. The Commissioner fixed a value of $175 per share. The taxpayers rely in part upon the fact that there were no actual sales of stock in excess of $125 per share. The evidence shows, however, that there were but few transfers and practically none about the time of the death of the decedents. The only appreciable sales were in the year 1913, during which blocks of 625 shares and 1,000 shares were purchased by one set of stockholders from another for $125 per share. Since that time the stock has been held by the original stockholders, their heirs, or estates, and no sales were reported, except two shares in 1921 and 26 shares in 1923, at $100. On June 4, 1924, a certain block of 106 shares, belonging to trusts, was offered for sale at $135, for a limited time, tó an officer of the company, but the offer was not accepted. Officers of the company and several stockbrokers and bankers testified that, in their opinion, it would have been difficult, under the circumstances, to sell the stock above par. The evidence, however, does not disclose that any serious effort was ever made to sell or buy any substantial amount of the stock, but, on the contrary, the stock was closely held and the stockholders evidently were satisfied with their investment.
*946 Isolated transfers of stock are not conclusive of the fair market value of other stock of the same issue. We have held that jvhen there is no evidence of market and but a few isolated sales, we must fall back upon an examination of the value of the assets behind the stock and analyze the earnings, balance sheets, and general conditions of the corporation itself, Appeal of Estate of Jacob Fish, 1 B. T. A. 882; Appeal of Howard K. Walter, 2 B. T. A. 453; and this is the situation in this appeal.
Even a most casual examination of the balance sheets and schedule of dividends and net earnings discloses that the corporation was in a most excellent condition. It was capitalized at $1,000,000, but, in spite of annual dividends over a consecutive period of over 10 years, averaging nearly 14 per cent, it had a book surplus on March 31, 1923, of $1,860,404.90, and on March 31, 1924, of $1,702,058.60. There was practically no indebtedness and its assets consisted of tangibles of a most substantial character. It had in its reserve securities admittedly of a market value of $650,530.92. It owned 474,419.6 acres of land valued on its books at $1,423,258 (at $3 per acre), and.even the assessed valuation of the land, fixed by the State Tax Commission of New Mexico at $1.75 per acre, gave it a value of approximately $830,000. The cattle were worth well over $550,000. In addition to this, the company had substantial assets in the form of cash, notes and accounts receivable, and improvements. We are also impressed with the fact that the company was a successful going concern, conservatively and efficiently managed, with every prospect of continued success. A valuation of the assets under the evidence adduced would be well over $2,000,000, a large portion of which were liquid assets. We are not overlooking the fact of the depressed market conditions in the cattle industry during the years 1922 and 1923. We note, however, that the company weathered the storm without dipping appreciably into its surplus, due to its foresightedness and excellent management, which we belive is illustrative of the stability of the corporation.
Without going into a detailed analysis of the various factors entering into the valuation of the stock, a summary of the evidence of value is substantially as follows :
Sale price of 1,625 shares in 1913- $125
Sale price of 2 shares, 1921- 100
Sale price of 25 shares, 1923-1- 100
Book value Mar. 31, 1922- 305
Book value Mar. 31, 1923_ 300
Book value Mar. 31, 1924-,_ 280
Fair value reported in capital stock tax return for 1922- 233
..Fair value reported in capital stock tax return for 1924- 220
*947 Appraised value Connecticut probate court, 1923- $128-
Offer of 106 shares but not accepted in 1924_ 135-
Valuation fixed by Commissioner_ 17⅛
The sale price of stock in 1913 should have no bearing on its value in 1922 and 1923, as, since that time, although the balance sheets of 1913 are not in evidence, it is admitted that a substantial portion of the surplus in the form of securities had been built up, and, also, the company has since that time a history of consecutive annual dividends and earnings averaging nearly 14 per cent. And neither are the isolated sales of the few shares in 1921 and 1923 indicative of the value, as we have pointed out.
We are convinced, from the evidence, irrespective of the method employed by the Commissioner in arriving at the value of the stock, that the value of $175 per share was very conservative and that the evidence is insufficient to disturb this -valuation.